UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAHEEB LOVING,

                                               Plaintiff,

                                                                                     DECISION AND ORDER

                                                                                     07-CV-6393L

                        v.

DONALD SELSKY,
CAPTAIN DI ANGELO,
LT. GILMORE,
C.O. BERG,
C.O. J. CLARK,
C.O. R. MC JURY,
JENNIFER INFURNARI,
SGT. CORCORAN,
R.N. DANNA SMITH,

                                              Defendants.
_____

       Plaintiff, Shaheeb Loving, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects in connection with certain incidents that occurred in December 2005 and January 2006, while plaintiff was confined at Attica Correctional Facility. Plaintiff has sued nine individual defendants, each of whom was a DOCS employee at the time of the relevant events.

Five of the defendants–Donald Selsky, Michael DiAngelo, Correction Officer ("C.O.") T. Clark, C.O. R. McJury, and Danna Smith–have moved for summary judgment dismissing the claims against them, pursuant to Rule 56 of the Federal Rules of Civil Procedure. A sixth defendant, Jennifer Infurnari, has moved to dismiss plaintiff's claim against her for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6). For the reasons that follow, defendants' motions are granted.

## DISCUSSION

### I. Claims Related to Plaintiff's Tier III Hearing

### A. Inadequate Assistance

Plaintiff was involved in an incident with several C.O.s on December 29, 2005. As a result, he was issued misbehavior reports charging him with attempted assault, threats, and other violations.

A Tier III hearing on the charges against plaintiff was commenced on January 8, 2006, and completed on January 11, 2006. Defendant DiAngelo, a DOCS captain, was the hearing officer. Defendants Clark and McJury were assigned to assist plaintiff. At the conclusion of the hearing, DiAngelo found plaintiff guilty on all the charges against him, and imposed a sentence of twelve months' confinement in the Special Housing Unit ("SHU") and loss of privileges, and loss of six months of good time.

Plaintiff has asserted three claims related to the Tier III hearing. In one of them, plaintiff alleges that Clark and McJury failed to provide him with adequate assistance in connection with the

hearing. Plaintiff alleges that they failed or refused to obtain certain evidence sought by plaintiff or otherwise to help plaintiff defend against the misbehavior charges.

The Second Circuit has held that "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988). In particular, an inmate must be provided some assistance when circumstances hamper the inmate's ability to prepare a defense, such as when the inmate is confined to SHU prior to the hearing. *See Ayers v. Ryan*, 152 F.3d 77, 81 (2d Cir. 1998); *Eng*, 858 F.2d at 898; *see also Hernandez v. Selsky*, 572 F.Supp.2d 446, 453 (S.D.N.Y. 2008) ("the obligation to provide assistance is greater as the inmates' ability to prepare a defense is reduced").

It appears that Loving was confined to SHU immediately following the December 29 incident, and that he remained there from then until the end of the term of confinement imposed upon him by DiAngelo. *See* Def. Ex. N (hearing disposition form indicating that start date of plaintiff's penalty was "12/29/05"). Plaintiff was therefore entitled to *some* assistance in preparing for the Tier III hearing.

How *much* assistance is constitutionally required is another matter. It is clear that the scope of DOCS's obligation in this regard is significantly limited, and that an inmate's right to assistance in connection with a disciplinary hearing–which arises under the Due Process Clause of the Fourteenth Amendment, *see Tate v. Wood*, 963 F.2d 20, 26 (2d Cir. 19992) (citing *Eng*, 858 F.2d at 898), falls far short of the right to counsel that the Sixth Amendment guarantees to criminal defendants. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (per curiam).

An inmate in SHU, for example, is entitled to have someone–either another inmate or a DOCS staff member–to assist him, but the assistant is only required to "perform the investigatory tasks which the inmate, were he able [*i.e.*, were he not confined to SHU], could perform for himself." *Eng*, 858 F.2d at 898. "The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a prisoner is not entitled." *Silva*, 992 F.2d at 22.

In the case at bar, defendants Clark and McJury were assigned to assist plaintiff from among a list of names that he had selected as requested assistants. Def. Ex. D. Plaintiff alleges in his complaint that on January 2, 2006, Clark came to his cell, but began arguing with plaintiff about plaintiff's requests that Clark interview certain witnesses and obtain certain documents. Complaint at 6 ¶ 6. It is not clear from the complaint what the argument was about, but plaintiff alleges that "Clark left," and that on January 4, McJury came to plaintiff's cell with one of the items that plaintiff had requested, the "Unusual Incident Report" pertaining to the December 29 incident.

At the hearing, DiAngelo asked plaintiff, "now what's the problem with your assistance [sic] here? It says that your witnesses are gonna testify." Hearing Transcript ("Tr.") (Dkt. #31 Ex. M) at 3. Plaintiff responded that he was "gonna have [his assistants] get witness statements from them." Tr. at 4. DiAngelo then stated that "we'll see if they'll submit them." *Id.* He added, "so other than these statements, there's nothing else that ... you need, correct?," to which plaintiff responded, "Not that I can think of right now." Tr. at 5. DiAngelo then stated that "we'll see if those inmates want to submit statements and then ... we'll have to reconvene at a later date and time." *Id.*

The hearing was then adjourned, and recommenced on January 10, 2006. The two inmate witnesses requested by plaintiff testified outside plaintiff's presence. Tr. at 6-7. DiAngelo states in a declaration that this was done for security reasons because plaintiff was in SHU at the time. Dkt. #31 ¶ 11.

Plaintiff was then returned to the hearing room, where DiAngelo played the tape of the witnesses' testimony for him. After the tape was played, plaintiff stated that he "want[ed] to object" concerning DiAngelo's "interviewing the witnesses ... ." Tr. at 8. DiAngelo responded, "I didn't interview them, I just got testimony from," when plaintiff interrupted him, stating, "Yeah, but that's the ... assistant's job to go interview them to get testimony ... ." *Id.* DiAngelo then asked rhetorically, "Well how am I going to hear the testimony if I don't get it?," and nothing further was said about the matter. *Id.*

Viewing the record in the light most favorable to plaintiff, these facts do not support a § 1983 claim. In general, "[w]hen a prisoner is in SHU, an employee assistant should ... interview witnesses" identified by the inmate. *Shephard v. Coughlin*, No. 91 CIV. 8725(MBM), 1993 WL 77385, at *5 (S.D.N.Y. Mar.16, 1993); *accord LeBron v. Artus*, No. 06-CV-0532, 2008 WL 111194, at *9 (W.D.N.Y. Jan. 9, 2008).

Most of the reported cases finding a due process violation based on a failure to interview witnesses requested by an inmate involve a complete failure to contact the potential witnesses, with the result that they were never called to testify. *See*, *e.g.*, *Johnson v. Greiner*, No. 03 Civ. 5276, 2007 WL 2844905, at *14-*15 (S.D.N.Y. Sept. 28, 2007) (denying summary judgment for defendants where "the record was devoid of any evidence demonstrating that Mack attempted to

interview witnesses or gather any of the requested evidence" sought by plaintiff); *Ciaprazi v. Goord*, No. Civ.9:02CV00915, 2005 WL 3531464, at *12 (N.D.N.Y. Dec. 22, 2005) (if true, plaintiff's allegation "that he identified certain witnesses critical to his defense, but that his assistant refused to interview those witnesses with an eye toward requesting their testimony during the hearing ... could establish a due process violation"); *see also Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, at *10 (S.D.N.Y. Mar. 31, 2006) (if true, plaintiff's allegation that "not only did his assistant not interview witnesses, [but] that his assistant actively pressured and threatened witnesses not to testify [and they did not testify], certainly falls short of the required level of employee assistance and, as such, implies that plaintiff was denied due process").

In part, that probably reflects the principle that, "[t]o establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Clark v. Dannheim*, ___ F.Supp.2d ___, 2008 WL 5111056, at *3 (W.D.N.Y. Dec. 2, 2008) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991)); *see, e.g.*, *Pilgrim v. Luther*, No. 01 Civ. 8995, 2007 WL 233203, at *5 (S.D.N.Y. Jan. 24, 2007) ("the alleged failure by Vaughn to perform his duties as an assistant [by interviewing witnesses] amounts to harmless error"); *Gates v. Selsky*, No. 02-CV-496, 2005 WL 2136914, at *7 (W.D.N.Y. Sept. 2, 2005) (applying harmless-error analysis to inadequate-assistance claim); *Louis v. Ricks*, No. 01 CIV. 9368, 2002 WL 31051633, at *15 (S.D.N.Y. September 13, 2002) (same).

In the case at bar, the two inmate witnesses requested by plaintiff were called, and did testify. Even if it would have been preferable to have obtained statements from them for plaintiff's review

prior to the hearing, plaintiff has not shown or explained how the hearing would likely have had a different outcome if that had been done. *Cf. Johnson*, 2007 WL 2844905, at *15 (even applying harmless-error analysis, summary judgment for defendants was not appropriate, based on evidence that, due to failure to provide inmate with assistance, he was not made aware of evidence against him until his disciplinary hearing, by which time his assigned assistant had ceased "assisting" him, and inmate thus "had to fend for himself during the hearing in attempting to understand the nature of the charges against him and determining which witnesses to call," all of which could have affected the outcome of the hearing).

**B. Failure to Hold a Timely Hearing**

Plaintiff also asserts a claim against DiAngelo, based on DiAngelo's alleged failure to comply with DOCS regulations concerning the time within which a Tier III hearing must be held. The regulation in question provides that "[w]here an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee." 7 N.Y.C.R.R. § 251-5.1(a).

Here, it appears that the hearing was originally scheduled to commence no later than January 3, 2006, but for various reasons it did not begin until January 8, 2006, ten days after the underlying

incident occurred. DiAngelo explains the reasons for the delay in his declaration, Dkt. #31, including the unavailability of plaintiff's assistant and DiAngelo's work schedule.

The Second Circuit has made clear that the seven-day period established by the regulations is not controlling for purposes of an inmate's due process claim under § 1983. *See Russell v. Coughlin*, 910 F.2d 75, 78 n. 1 (2d Cir. 1990) (rejecting inmate's assertion that "seven-day" rule of § 251-5.1(a), provides the appropriate benchmark for determining what is a "reasonable time" in which to hold a hearing). The court in *Russell* stated that "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). "Those [federal] standards require only that the hearing be held within a 'reasonable time' and not within any [particular] number of days. 'What is considered a "reasonable time" will depend upon the particular situation being examined.'" *Shell v. Brzezniak*, 365 F.Supp.2d 362, 376 (W.D.N.Y. 2005) (nine-day delay in beginning hearing was reasonable). *See also Bolanos v. Coughlin*, No. 91 Civ. 5330, 1993 WL 762112, *15 (S.D.N.Y. Oct. 15, 1993) (eight-day delay held reasonable); *Donato v. Phillips*, No. 9:04-cv-1160, 2007 WL 168238, at *5 (N.D.N.Y. Jan. 18, 2007) ("there can be no due process violation for a hearing that occurs within two weeks of placement in SHU," where "[t]here is no evidence in the record that the days Plaintiff spent in SHU pending the commencement of the hearing imposed an atypical and significant hardship on him") (citing *Sandin v. Connor*, 515 U.S. 472 (1995)).[1]

---

[1] Plaintiff also appears to assert a claim against DiAngelo based upon DiAngelo's denial of plaintiff's request to call defendant Selsky as a witness. *See* Complaint ¶¶ 11, 12. This claim is meritless on its face, as there is no indication in the record that Selsky's testimony would or even could have been relevant or material. *See LeBron*, 2008 WL 111194, at *12 ("prison officials may deny requested testimony ... where [the testimony would be] irrelevant or
(continued...)

**C. Claim against Selsky**

Plaintiff also asserts a claim against Donald Selsky, the DOCS Director of the Special Housing/Inmate Disciplinary Program, based on his affirmance of DiAngelo's determination. Since there was no underlying constitutional violation, however, this claim must be dismissed as well. *See Hernandez v. Tiede*, No. 94-CV-908, 1996 WL 863453, at *7 (W.D.N.Y. May 29, 1996).

**II. Claim against Nurse Smith**

Plaintiff asserts a claim under the Eighth Amendment against Danna Smith, a nurse employed by DOCS, who examined plaintiff shortly after the December 29 incident between plaintiff and the C.O. defendants. Plaintiff alleges that Smith did not adequately examine him to determine the extent and severity of plaintiff's injuries, and that in her written notes, Smith downplayed or minimized the extent of those injuries. Even viewing the record in the light most favorable to plaintiff, I find that there are no genuine issues of fact material to this claim, and that Smith is entitled to judgment as a matter of law.

To show that prison medical treatment was so inadequate as to amount to "cruel and unusual punishment" prohibited by the Eighth Amendment, plaintiff must prove that defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish such a claim, then, the prisoner must prove (1) the existence of a serious medical need and (2) defendant's deliberate indifference to that need. *Bumpus v. Canfield*, 495 F.Supp.2d 316, 320 (W.D.N.Y. 2007).

---

[1](...continued)
unnecessary to the proceeding") (citing *Scott v. Kelly*, 962 F.2d 145, 147 (2d Cir. 1992)).

Plaintiff has failed to present enough evidence to give rise to a genuine issue of fact as to either prong. He may believe that Nurse Smith should have undertaken a more extensive examination than she did, or that her description of his visible injuries was inaccurate, but he has not shown that she acted with a culpable state of mind or that she ignored any serious medical need. *See Moore v. Casselberry*, ___ F.Supp.2d ___, 2008 WL 4768831, at *1 (W.D.N.Y. 2008) (dismissing § 1983 claim against nurse based on alleged filing of false medical report; "even if the report was incomplete or false, that does not state a federal constitutional violation") (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)).

### III. Claim against Infurnari

Plaintiff's first cause of action is based upon the alleged assault on plaintiff by the defendant C.O.s on December 29, 2005. In addition to the C.O.s themselves, plaintiff has named Jennifer Infurnari as a defendant on this claim. Infurnari was working at the Attica commissary window at the time of the alleged assault, and it was a verbal exchange between her and plaintiff that led to the C.O.s being called, and, allegedly, assaulting plaintiff. *See* Complaint at 5, ¶¶ 1-3.

This claim must be dismissed. It is clear from the allegations of the complaint that Infurnari did not participate in any way in the alleged assault, nor did she have any duty to intervene. In addition, to the extent that the complaint could be construed as asserting a claim that Infurnari filed a false misbehavior report against plaintiff, that too fails to state a cognizable § 1983 claim. *See Davis v. Castleberry*, 364 F.Supp.2d 319, 323 (W.D.N.Y. 2005). In short, there is simply no factual basis in the complaint for any constitutional claim against Infurnari.

**CONCLUSION**

The motion for summary judgment by defendants Selsky, DiAngelo, Clark, McJury and Smith, and to dismiss the claims against defendant Infurnari (Dkt. #30) is granted, and plaintiff's claims against those defendants are dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 12, 2009.